UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CIVIL ACTION |
| v. | * | NO. 26-CV-0113 |
| SUSAN HUTSON, in her official capacity as ORLEANS PARISH CRIMINAL SHERIFF | * | JUDGE |
| | * | MAG. JUDGE |

**MEMORANDUM IN SUPPORT OF
PETITION TO ENFORCE ADMINISTRATIVE SUBPOENAS**

**I.   Introduction and summary of the argument**

**MAY IT PLEASE THE COURT**: Congress has granted the United States Department of Homeland Security (DHS) Immigration and Customs Enforcement (ICE) authority to issue administrative subpoenas to aid its statutory mandate to enforce federal immigration laws, which include the removal of inadmissible aliens. Under long-standing Supreme Court precedent, administrative subpoenas are judicially enforceable if they are "within the authority of" ICE, "not too indefinite," and seek "reasonably relevant" information. *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950). ICE has issued numerous administrative subpoenas to respondent, Susan Hutson, in her official capacity as Orleans Parish Criminal Sheriff, over the past few months seeking testimony from and documents about aliens and inmates in her custody, but respondent has refused to comply. Because ICE's administrative subpoenas satisfy the deferential *Morton Salt* standard and respondent lacks any good cause for its noncompliance, the Court should, for these reasons, grant the United States' petition and enforce respondent's compliance with the outstanding administrative subpoenas under penalty of contempt.

## II.  Facts and procedural background

### a. ICE's statutory mandate and tools to enforce federal immigration laws

ICE enforces federal immigration laws. *See* Sect. III.c.i., *infra*; *see also* Ex. A at p. 2, ¶¶ 4–5 (Declaration of ICE Deputy Field Office Director). The agency prioritizes the apprehension, arrest, and removal of convicted criminals, those who pose a threat to national security, fugitives, recent border entrants, and aliens who thwart immigration controls. *Id*. at p. 2, ¶ 5.

ICE has several statutory mechanisms that aid its enforcement of federal immigration laws. One is an immigration detainer. *Id*. at p. 3, ¶ 9. If ICE determines that a removable individual is in state or local custody, it will issue a detainer request that the law-enforcement agency: 1) notify ICE at least 48 hours before releasing the individual; and 2) maintain custody of the individual for up to 48 hours after the scheduled release date to allow ICE sufficient time to assume custody. *Id*. (citing 8 U.S.C. § 1357; 8 C.F.R. § 287.7). But respondent doesn't honor ICE detainer requests. *Id*. at p. 4, ¶¶ 12–13. Over the past four years, it has ignored 98.8% of ICE's 170 total detainer requests. *Id*.

### b. ICE's administrative subpoenas

In addition to detainers, ICE also has statutory authority to issue administrative subpoenas for testimony and documents. *Id*. at p. 4, ¶ 14 (citing 8 U.S.C. § 1225(d); 8 C.F.R. § 287.4(c)). It has issued 20 total administrative subpoenas to respondent between October 2025 and January 2026, as further outlined below. *Id*. at ¶¶ 14, 20, & 75–85; *id*. at Ex. A.1–20 (administrative subpoenas).

### i. First round of administrative subpoenas for testimony from and documents concerning six aliens

ICE issued the first round of subpoenas to respondent for testimony from[1] and documents concerning six aliens for whom ICE had already issued detainers. *Id*. at p. 4, ¶ 15; *see also id.* at Ex. A.1, 3, 5, 7, 9, & 11 (first-round subpoenas). Each alien was in respondent's custody for state-law criminal charges. *Id*. at pp. 7–12. ICE had probable cause to believe that each may be subject to removal from the United States under federal immigration laws. *Id*. at p. 7, ¶ 23. The information sought was relevant to ICE's inquiries concerning alienage, potential adjustment of status and relief applications, mandatory detention, and potential federal criminal grounds supporting removability. *Id*. at pp. 4–5, ¶¶ 16–17; *id*. at pp. 5–6, ¶ 19.

### ii. Second round of administrative subpoenas clarifying prior document requests, adding three aliens, and setting firm return dates

In December 2025, ICE issued a second round of subpoenas. *Id*. at p. 6, ¶ 20. Six of those subpoenas identified the precise documents ICE sought concerning the same six aliens identified in the first round of subpoenas. *Id*. Specifically, ICE requested documents showing the respective alien's home and work addresses, country and date of birth, driver's license, passport, and FBI numbers, foreign ID cards, documents in possession at the time of arrest, emergency-contact information, bond information, arrest report, booking sheet, probable-cause statement, and other documents related to the respective criminal charge. *Id*.; *see also id*. at Ex. A.2, 4, 6, 7, 10, & 12 (second-round document subpoenas for six aliens in first round).

---

[1] To be clear, the subpoenas sought testimony from the aliens themselves, not from the respondent. But because ICE is unable to directly serve the aliens with administrative subpoenas while incarcerated, the subpoenas were served on the respondent as the aliens' custodian. Ex. 1 at p. 4, ¶¶ 14–16; *see also* LA. CODE CIV. PROC. art. 1235.1(A) ("Service is made on a person who is incarcerated in a jail or detention facility through personal service on the warden or his designee for that shift. The warden or his designee shall in turn make personal service on the person incarcerated.").

In this second round, ICE also served administrative subpoenas for this same class of documents regarding three additional aliens subject to detainer requests. *Id*. at p. 6, ¶ 21. These second-round subpoenas set a firm return date of January 2, 2026. *Id*. at p. 7, ¶ 22; *see also id*. at Ex. A.13–15 (second-round document subpoenas for three additional aliens).

### iii. Third round of administrative subpoenas for suspected-alien lists

Beginning in November 2025 through January 2026, ICE served five total administrative subpoenas on respondent for lists of then-current inmates in its custody who had failed to provide verifiable IDs indicative of lawful presence in the United States. *Id*. at p. 13, ¶ 75. These requests issued for ICE to learn the identities of potential aliens in respondent's custody who—unlike the nine aliens identified in the first two rounds of subpoenas—are not yet known to immigration officials as likely removable. *Id*. at p. 14, ¶ 76. ICE sought the respective inmate's name, date of birth, demographic information, address, driver's license, FBI, passport, and state ID number(s) (if applicable and available). *Id*. at p. 14, ¶ 79; *see also id*. at Ex. A.16–20.[2]

The latest return date on the final subpoena in this third round was January 14, 2026. *Id*. at p. 15, ¶ 84; *see also id*. at Ex. A.20.

### c. Respondent's response

To date, respondent hasn't produced any subpoenaed aliens for testimony, nor returned any responsive documents to any of the 20 administrative subpoenas identified in and attached to the declaration. *Id*. at ¶¶ 29, 36, 41, 48, 53, 58, 65, 69, 74, 86, & 91. ICE met via videoconference with respondent's representatives on January 7, 2026 to discuss and, hopefully, resolve the non-compliance. *Id*. at pp. 16–17, ¶¶ 87–90. Respondent indicated that it was bound by its own policy

---

[2] ICE issued multiple requests for this same class of information because respondent's inmate lists are likely to change periodically. Ex. A at p. 15, ¶ 85.

on ICE procedures adopted in a settlement agreement and consent decree in *Cacho v. Gusman*, No. 11-225 (E.D. La.), Div. 1 at Rec. Doc. 95-3. *Id*. at p. 16, ¶ 90. In respondent's opinion, the *Cacho* policy prohibited compliance with ICE's then-outstanding subpoenas. *Id*.[3]

### III. Argument

#### a. Standard of review

In 8 U.S.C. § 1225(d)(4)(A), Congress authorized immigration officers to "require by subpoena the attendance and testimony of witnesses before immigration officers and the production of books, papers, and documents relating to the privilege of any person to enter, reenter, reside in, or pass through the United States or concerning any matter which is material and relevant to the enforcement of this chapter and the administration of the Service."

When a recipient of an ICE subpoena does not comply, as here, the Attorney General or immigration officer "may invoke the aid of any court of the United States" to enforce the subpoena. 8 U.S.C. § 1225(d)(4)(A). "Any United States district court within the jurisdiction of which investigations or inquiries are being conducted by an immigration officer may, in the event of neglect or refusal to respond to a subpoena issued under this paragraph . . . issue an order requiring such persons to appear before an immigration officer, produce books, papers, and documents if demanded, and testify[.]" 8 U.S.C. § 1225(d)(4)(B). "[A]ny failure to obey such order of the court may be punished by the court as a contempt thereof." *Id*.

"[I]t is settled that the requirements for judicial enforcement of an administrative subpoena are minimal." *Burlington N. R. Co. v. Off. of Inspector Gen., R.R. Ret. Bd.*, 983 F.2d 631, 637 (5th

---

[3] The most-recent administrative subpoena from the third round for a list of inmates was due on January 14, 2026 – one week after ICE's meeting with respondent. *See* Ex. A at p. 15, ¶ 84. Given respondent's non-compliance with ICE's four prior administrative subpoenas seeking the same class of documentation, it is safely presumed that respondent's position on the *Cacho* policy applies equally to this final subpoenas as well.

Cir. 1993). The Supreme Court has held that an administrative subpoena "is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." *Morton Salt*, 338 U.S. at 652; *accord McLane v. EEOC*, 581 U.S. 72, 77 (2017) (holding that if the information sought by an administrative subpoena is relevant to the agency's inquiry, "the district court should enforce the subpoena" unless it's "too indefinite, has been issued for an illegitimate purpose, or is unduly burdensome" (internal citation and quotation marks omitted)); *Winters Ranch P'ship v. Viadero*, 123 F.3d 327, 329–30 (5th Cir. 1997) ("When called upon to enforce an administrative subpoena, a court's role is limited to evaluating whether (1) the subpoena was issued for a lawful purpose within the statutory authority of the issuing agency; (2) the documents requested are relevant to that purpose; and (3) the subpoena demand is reasonable and not unduly burdensome."); *N.L.R.B. v. Line*, 50 F.3d 311, 314 (5th Cir. 1995) (same).

### b. A summary proceeding is appropriate for judicial enforcement of administrative subpoenas.

The United States seeks judicial enforcement of administrative subpoenas through a summary proceeding under FED. R. CIV. P. 81(a)(5) that dispenses with service of a summons and associated delays for a response and hearing.

In general, the Federal Rules of Civil Procedure "apply to proceedings to compel testimony or the production of documents through a subpoena issued by a United States officer or agency under a federal statute, except as otherwise provided by statute, by local rule, or by court order in the proceedings." FED. R. CIV. P. 81(a)(5). This final quoted phrase permits courts to issue orders to modify other rules considering the summary nature of the proceeding. *See* FED. R. CIV. P. 81 advisory committee's note to 1946 amendment (explaining that this provision "allows full recognition of the fact that the rigid application of the rules in the proceedings may conflict with

the summary determination desired").

The Fifth Circuit "has consistently recognized the summary nature of administrative subpoena enforcement proceedings." *Burlington*, 983 F.2d at 637. "The effect of Rule 81(a)[5] is to give district courts discretion in a wide variety of subpoena enforcement proceedings to tailor the Federal Rules to the particular needs and purposes of the proceeding." *United States v. McCoy*, 954 F.2d 1000, 1004 (5th Cir. 1992) (internal citation omitted). An action to enforce administrative demands, like tax summonses and the like, is "a most appropriate candidate for streamlined procedures." *Id.*; *see also United States v. Elmes*, 532 F.3d 1138, 1143–44 (11th Cir. 2008) (holding in a summons-enforcement proceeding that the district court had properly modified Rule 4 to require service of only the district court's order and the petition to enforce, and not a summons, because under Rule 81(a)(5) "the district court is plainly authorized to be flexible in its application of the civil rules").

For these reasons, the Court should address the United States' present petition to enforce administrative subpoenas in a summary proceeding that allows service of the petition, declaration, exhibits, and this memorandum without a summons, and sets a show-cause hearing and associated briefing deadlines for respondent.

### c. The administrative subpoenas satisfy the *Morton Salt* standard for judicial enforcement.

The *Morton Salt* standard is "deferential,"[4] "quite narrow,"[5] and "strictly limited";[6] the

---

[4] *E.E.O.C. v. Aerotek, Inc.*, 815 F.3d 328, 333 (7th Cir. 2016).

[5] *E.E.O.C. v. Karuk Tribe Hous. Auth.*, 260 F.3d 1071, 1076 (9th Cir. 2001) (internal citation omitted).

[6] *United States v. Armada Petroleum Corp.*, 562 F. Supp. 43, 48 (S.D. Tex. 1982) (internal citation omitted).

United States easily satisfies it here. *See*, *e.g.*, *Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*, 878 F.2d 875, 878 (5th Cir. 1989) ("[A]n administrative agency's power to issue subpoenas as it performs its investigatory function is a broad-ranging one which courts are reluctant to trammel."); *United States Immigr. & Customs Enf't v. Gomez*, 445 F. Supp. 3d 1213 (D. Colo. 2020) (granting petition for judicial enforcement of ICE administrative subpoenas under § 1225(d)(4)(B) despite objections from local law enforcement); *United States of America v. Multnomah Cnty. Dep't of Cmty. Just., et al.*, No. 25-1784, 2025 WL 3267361 (D. Or. Nov. 24, 2025) (same).

### i. The administrative subpoenas are within ICE's authority.

The first element of the *Morton Salt* test is met because the administrative subpoenas are "within the authority of the agency." *Morton Salt*, 338 U.S. at 652.

The Supreme Court has recognized that the administrative-subpoena authority of a federal agency is broad because the purpose of an administrative subpoena is not adjudicative, but is instead a power "to inquire." *United States v. Clarke*, 573 U.S. 248, 254 (2014) (explaining that the purpose of an IRS summons "is not to accuse, much less to adjudicate, but only to inquire" (cleaned up)); *see also United States v. Powell*, 379 U.S. 48, 57 (1964) (discussing other agencies' administrative subpoena powers as a "power of inquisition" (quoting *Morton Salt*, 338 U.S. at 642–43)). Administrative agencies possess "powers of original inquiry" that allow them to "take steps to inform [themselves] as to whether there is probable violation of the law." *Morton Salt*, 338 U.S. at 642–43; *U.S. Dep't of Lab. v. Kast Metals Corp.*, 744 F.2d 1145, 1150 (5th Cir. 1984) ("The purpose of an administrative investigation is to uncover facts with an eye towards the potential initiation of an agency adjudication.").

ICE's statutory authority is not limited to determining the admissibility of aliens entering the United States. In § 1225(d)(4)(A), Congress empowered ICE to issue administrative subpoenas for documents that relate to whether an alien may reside in the United States, or to aid in the enforcement of the immigration laws as to aliens. In the relevant provision, Congress permitted such subpoenas to be issued "relating to the privilege of any person to enter, reenter, reside in, or pass through the United States or concerning any matter which is material and relevant to the enforcement of this chapter and the administration of the service…." 8 U.S.C. § 1225(d)(4)(A).[7]

Thus, section 1225(d)(4)(A) provides ICE with authority to demand information on matters "encompass[ing] the full range of subjects covered by the [the Immigration and Nationality Act of 1952]." *United States v. Minker*, 350 U.S. 179, 185–86 (1956). In *Minker*, the Supreme Court considered this provision as it appeared in a predecessor statute. It observed that the provision, when originally drafted, extended only to "documents touching the right of any alien to enter, reenter, reside in, or pass through the United States," but Congress later added language that "extended the subpoena power…." *Id*. at 184–85. The Court ruled that, after this amendment, the scope of this subpoena power could not reasonably be viewed as limited to matters relating "to an investigation pertaining to questions of admission and deportation" because "[t]he comprehensive addition of the clause 'or concerning any matter which is material and relevant to the enforcement of this Act and the administration of the Service', precludes such narrowing reading." *Id.* at 185. The Court observed that this subpoena provision did appear "in the immigration title" of the statute, but explained that "the title of a statute and the heading of a section cannot limit the plain

---

[7] The "chapter" refers to Title 8, Chapter 12, of the United States Code, which encompasses, in Subchapter II, the topic of "Immigration," which in turn includes, in Part IV, the immigration statute's provisions related to "Inspection, Apprehension, Examination, Exclusion, and Removal" of aliens. *See* 8 U.S.C. Chapter 12, Subchapter II, Part IV, at §§ 1221-1232.

meaning." *Id.*[8]

Courts have observed since *Minker* that its holding precludes a narrow reading of ICE's subpoena power. *See United States v. Van*, 931 F.2d 384, 387 (6th Cir. 1991) ("Although [this subpoena provision] appears in a part of the Immigration Act that describes the powers of INS agents on border patrol, the Supreme Court has held that the addition of the clause 'or concerning any matter which is material and relevant to the enforcement of the Act' encompasses the full range of subjects covered by the statute" (citing *Minker*, 350 U.S. at 184-85)); *see also Sherman v. Hamilton*, 295 F.2d 516, 522 (1st Cir. 1961) (affirming district court's order enforcing subpoena under predecessor statute).

Here, ICE is investigating aliens who it has probable cause to believe are removable, *see* Ex. A at p. 7, ¶ 23, and seeks documents showing basic information relating to the identity, location, and recent criminal charges as to each alien. Ex. A at p. 6, ¶ 20. These matters fall within the broad scope of inquiry authorized by Congress in § 1225(d)(4)(A). And ICE is authorized to investigate such matters, as it's uncontested that "[u]nlawful entry and unlawful reentry into the country are federal offenses." *Arizona v. United States*, 567 U.S. 387, 395 (2012); *see also* 8 U.S.C. § 1182 (establishing various classes of inadmissible aliens, including illegal entrants, i.e., those "present in the United States without being admitted"); 8 U.S.C. § 1227 (establishing grounds for removal); *Crane v. Johnson*, 783 F.3d 244, 247 (5th Cir. 2015) ("[A]liens may be removed if they were inadmissible at the time of entry, have been convicted of certain crimes, or meet other criteria

---

[8] *Minker* went on to address whether this provision gave immigration officers authority to question, as "witnesses," United States citizens facing denaturalization; the Court concluded that "considerations of policy" led it to interpret the provision as not providing this authority. 350 U.S. at 187–90. That holding does not apply here, as none of the aliens under investigation here are United States citizens facing denaturalization. *See generally* Ex. A at pp. 7–15 (ICE Deputy Field Office Director's declaration outlining information known regarding nine aliens identified in the first two rounds of subpoenas, and information sought in lists in the third round).

set by federal law." (quoting *Arizona*, *supra*)); *Texas v. United States*, 86 F. Supp. 3d 591, 657 (S.D. Tex.), *aff'd,* 809 F.3d 134 (5th Cir. 2015), *as revised* (Nov. 25, 2015) ("An alien is 'removable' if the alien has not been admitted and is inadmissible under Section 1182, or in the case of an admitted alien, the alien is deportable under Section 1227."); *Plyler v. Doe*, 457 U.S. 202, 220 (1982) ("[T]hose who elect to enter our territory by stealth and in violation of our law should be prepared to bear the consequences, including, but not limited to, deportation."); *cf.* 8 U.S.C. § 1357(a)(1) (granting ICE "power without warrant--to interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States").

Because ICE is authorized to investigate these aliens, its subpoenas are authorized by § 1225(d)(4)(A). *See Multnomah*, 2025 WL 3267361, at *3 (citing *Minker* and holding that "HSI's subpoenas are enforceable under the law"); *Gomez*, 445 F. Supp. 3d at 1217 ("The Sheriff does not challenge ICE's general statutory authority to issue subpoenas."); *cf. United States v. Ragauskas*, No. 94-2325, 1994 WL 445465, at *2 (N.D. Ill. Aug. 12, 1994) (enforcing an administrative subpoena under § 1225 in an investigation of a permanent resident alien suspected of collaborating with the Nazis, and concluding that "[c]learly, the investigation is authorized by Congress for a legitimate purpose").

### ii. The administrative subpoenas are not too indefinite.

The second element of the *Morton Salt* test is met because ICE's subpoenas are specific and not "too indefinite." *Morton Salt*, 338 U.S. at 652.

The definiteness requirement ensures that the records sought can be identified by their description in the subpoena. *Cf. Okla. Press Pub. Co. v. Walling*, 327 U.S. 186, 208 (1946) (explaining that a subpoena may be improper if there is "too much indefiniteness or breadth" in the request); *Perez v. Alegria*, No. 15-401, 2015 WL 4744480, at *3 (D. Kan. Aug. 11, 2015) (explaining that an administrative subpoena is sufficiently definite when "[a]ll of the categories of

information are sufficiently specific to enable" the recipient of the subpoena "to understand what information the [agency] seeks.").

Each subpoena here is sufficiently definite. For the testimonial demands, each testifying alien in respondent's custody is identified by name, date of birth, and A-file number. *See* first-round subpoenas at Ex. A.1, 3, 5, 7, 9, & 11. Likewise, the second- and third-round subpoenas for documents provide ample specificity on the precise responsive information sought to establish the alien or inmate's identification and criminal charge. *See* second- and third-round subpoenas at Ex. A.2, 4, 6, 8, 10, 12, & 13–20.

These subpoenas are sufficiently specific that they do not burden respondent by requiring it to review a wide array of materials and make complex judgments as to their potential responsiveness. *See Multnomah*, 2025 WL 3267361, at *3 (holding that ICE's administrative subpoenas were sufficiently definite when "[t]hey solicit discrete pieces of information and documents relating to nine individuals"). Indeed, respondent hasn't asserted any breadth, vagueness, scope, or burden objections. *See* Ex. A at p. 16, ¶ 90. To the contrary, its compliance objection is based exclusively on the *Cacho* policy, discussed below.

### iii. The administrative subpoenas seek relevant evidence.

Finally, the third element of the *Morton Salt* test is met because the documents sought are "reasonably relevant" to the ongoing investigations. *Morton Salt*, 338 U.S. at 652.

Courts have made clear that the scope of information that may be sought by an administrative subpoena is much broader than the subpoena authority available during a judicial process. The Supreme Court held as much in *Morton Salt*, where a corporation challenged the authority of the Federal Trade Commission to issue administrative subpoenas. The corporation argued that the FTC's subpoena was too broad because it was "engaged in a mere 'fishing expedition' to see if it can turn up evidence of guilt." 338 U.S. at 641.

The Court rejected this argument and criticized prior cases that had "engraft[ed] judicial limitations upon the administrative process." *Id*. at 642; *see also id.* ("This case illustrates the difference between the judicial function and the [investigative] function the [FTC] is attempting to perform."). *Morton Salt* explained that administrative subpoenas can properly be based on "official curiosity" about whether a party has complied with the law. *See id.* at 652 ("Even if one were to regard the request for information in this case as caused by nothing other than official curiosity, nevertheless law-enforcing agencies have a legitimate right to satisfy themselves that corporate behavior is consistent with the law and the public interest.").

Accordingly, where an agency has the authority to issue an administrative subpoena to investigate a matter, "relevance" is given a broad meaning. *Multnomah*, 2025 WL 3267361, at *3 ("Courts have constructed the term 'relevant' capaciously" as applied to administrative subpoenas). The Supreme Court recognized this principle in *United States v. Arthur Young & Co.*, 465 U.S. 805 (1984), where it explained that when a statute permitted the IRS to "examine any books, papers, records or other data which may be relevant or material to a particular tax inquiry," the inquiry was "not to be judged by the relevance standards used in deciding whether to admit evidence in federal court," and that the IRS "should not be required to establish that the documents it seeks are actually relevant in any technical, evidentiary sense." *Id.* at 813–14 (cleaned up); *see also id*. at 815 ("Records that illuminate any aspect of the return … are therefore highly relevant to legitimate IRS inquiry."); *EEOC v. Shell Oil Co.*, 466 U.S. 54, 68 (1984) (observing that the relevancy requirement in administrative investigations "is not especially constraining").

Here, ICE's subpoenas meet the requirement for "reasonable relevance" because the testimony and documents sought relate directly to the aliens under investigation. Ex. A at pp. 7–13. ICE has reasonably determined that the testimony and documents are relevant and

material to those investigations. *Id*. As explained above and in the accompanying declaration, the information sought will aid ICE in identifying the aliens in various ways, confirming their alienage, determining ways the aliens could be contacted or located, and ascertaining their recent criminal activity and history. *See* Ex. A at pp. 4–5, ¶¶ 16–17; pp. 5–6, ¶¶ 19–20; & p. 7, ¶ 23. This information will aid in determining whether the aliens are removable, in potentially securing their apprehension, in evaluating their dangerousness to ensure the safety of law-enforcement officers who may seek to apprehend them and the safety of the public, and in determining whether the aliens, if apprehended, may be appropriate for detention and criminal prosecution. *See generally id*. at pp. 5–6, ¶¶ 17–19.

In sum, the subpoenas meet all elements of the *Morton Salt* test. Because ICE had authority to issue the subpoenas, and the testimony and documents sought are both sufficiently definite and relevant to the agency's investigation, the Court should enforce the subpoenas. *Cf. Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509 (1943) (holding that a district court had a "duty" to order production of evidence sought by the Department of Labor through an administrative subpoena where "[t]he evidence sought was not plainly incompetent or irrelevant to any lawful purpose of the agency").

### d. Respondent's *Cacho* policy is not an impediment to enforcement.

Respondent has interposed its *Cacho* policy as an impediment to its compliance. Ex. A at p. 16, ¶ 90. This defense is meritless for several reasons.

First, respondent's policy, on its face, pertains only to Form I-247 detainer requests for a 48-hour hold issued under authority of 8 C.F.R. § 287.7 and 8 U.S.C. § 1357(d)(3), *see* Ex. A.24, not administrative subpoenas for documents under 8 U.S.C. § 1225(d)(4)(A), which issued in this case. *See Gomez*, 445 F. Supp. 3d at 1216 ("[T]he issue before the Court is not such [detainer] requests by ICE or the Sheriff's responses but, rather, the validity of the subject subpoenas.").

Second, respondent's policy allows, if not implicitly requires, compliance with ICE detainers for aliens charged with six specified state crimes. *See* Ex. A.24. In this instance, two of nine aliens identified in the first and second rounds of ICE's administrative subpoenas were, in fact, charged with one of these specified state crimes in the *Cacho* policy. *See id.* at p. 8, ¶ 31 & p. 12, ¶ 60. Thus, respondent is non-compliant with its own *Cacho* policy on detainers.

Third, the federal consent decree that yielded the *Cacho* policy is subject to a motion to dissolve filed by an intervenor, the State of Louisiana, that has been pending for more than 30 days. *See Cacho v. Gusman*, No. 11-225 (E.D. La.), Div. 1 at Rec. Doc. 157. For that reason, the State has asserted on the record that the terms of the consent decree are stayed by operation of the Prison Litigation Reform Act, 18 U.S.C. § 3626(e). *See id.* at Rec. Doc. 161; *Miller v. French*, 530 U.S. 327, 331 (2000). Respondent, a party to the pending motion practice in *Cacho*, hasn't objected to or contested the State's assertion.

### IV. Conclusion

For these reasons, the Court should order respondent to appear at a show-cause hearing, submit timely briefing under the Court's local rules, and explain in a summary proceeding under Rule 81 why the United States' petition for judicial enforcement of administrative subpoenas should not be granted.

[SIGNATURE BLOCK ON FOLLOWING PAGE]

Respectfully submitted,

DAVID I. COURCELLE
UNITED STATES ATTORNEY

*s/Peter M. Mansfield*

PETER M. MANSFIELD (#28671)
BROCK D. DUPRE (#28563)
Assistant United States Attorneys
U.S. Attorney's Office (E.D. La.)
650 Poydras Street, Suite 1600
New Orleans, Louisiana 70130-7212
Telephone: (504) 680-3047
Email: Peter.Mansfield@usdoj.gov
Brock.Dupre@usdoj.gov