# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | MIS CASE NO. <u>26-113</u> |
| V. | * | SECTION O(3) |
| SUSAN HUTSON, in her official capacity as, ORLEANS PARISH CRIMINAL SHERIFF | * * * | JUDGE LONG<br><br>MAGISTRATE JUDGE DOSSIER |

## <u>RESPONDENT'S MEMORANDUM OBJECTING TO NEW & REVISED SUBPOENAS</u>

Pursuant to this Court's March 18, 2026 order, Respondent Orleans Parish Sheriff Susan Huston hereby submits objections as follows:

Immigration and Customs Enforcement ("ICE") has submitted new and/or revised subpoenas in an attempt to cure a host of substantive and procedural defects therein ICE's original subpoenas that served as the bases for this summary enforcement action. However, the new and/or revised subpoenas fail at curing the fundamental issues with the original subpoenas. To start, now that ICE addresses the witness-production subpoenas directly to the witnesses themselves, the Orleans Parish Sheriff's Office ("OPSO") is no longer party to those subpoenas and has not been authorized to represent the witnesses concerning the same. Furthermore, Section 1225(d)(4) of the Immigration and Nationality Act ("INA") still does not allow for enforcement of a subpoena against a third party or the creation of lists of suspected noncitizens. Similarly, the Tenth Amendment still does not allow federal authorities to force state and local authorities to expend resources to carry out federal programs. Still, the new and/or revised subpoenas act as tacit admissions against the validity of the originals, and ICE's petition to enforce the subpoenas should be wholly denied.

## BACKGROUND

On January 16, 2026, the federal government sought enforcement of a series of subpoenas ("original subpoenas" or "originals") from this Court. United States' Petition to Enforce Administrative Subpoenas, Dkt. 1. The original subpoenas requested 1) documents concerning nine persons, 2) delivery of six of those persons to ICE for testimony, and 3) continually updated rosters for persons in OPSO custody who lack documents that indicate lawful immigration status. *See* Declaration of Brian S. Acuna ("Acuna Decl."), Dkt. 1-2, at 75–85.

On March 24, 2026, the federal government filed new and/or revised subpoenas. *See* United States' Memorandum Re Subpoena Revisions, Dkt. 43. In relevant part, the revised subpoenas for testimony are now addressed directly to the individuals for whom testimony is sought. Revised and Served Subpoenas ("Rev. Subp."), Dkt. 43-1, at 13-20. They also now demand appearance on April 14, 2026 from individuals at ICE's office "and/or video conferencing platform." *Id*. ICE further added one parenthetical sentence to its subpoena requesting rosters of suspected noncitizens in OPSO custody: "Related to OPSO AS400 data fields 108/ 118/ 121/ 141/ 143/ 144/ 149/ 185/ 186/ 1160/ 100/ 342/ 357/ 954/ 966/ 47/ 1157/ 1159/ 1160/ 313." *Compare* Acuna Decl. at 62 *with* Rev. Subp. at 23.

## ARGUMENT

### I.  ICE's Revised Subpoenas for Witness Testimony and Rosters Still Exceed § 1225(d)(4)'s Statutory Authority

#### A.  OPSO is no longer a party to ICE's testimony subpoenas, which remain improper in any event.

ICE's original witness-production subpoenas required OPSO to transport detainees to the out-of-parish ICE office for interviews or arrange for ICE to take custody upon release. Acuna

Decl. at 21. The federal government cited no legal authority for this request, and indeed there is none. ICE's request was improper in part because subpoenas under 8 U.S.C. § 1225(d)(4)(A) (indeed, subpoenas generally) are not the proper vehicle for compelling a custodian to produce a detainee in its custody for a witness interview. Defendant's Memorandum in Opposition to Petition to Enforce Administrative Subpoena ("Opp.") at 5-7. The United States did not identify a single court that has *ever* ordered a third party to produce the subject of a subpoena for the purposes of interrogation solely based on a subpoena.

In response to this argument, ICE has revised the subpoenas such that they are no longer directed to OPSO and instead summon the detainees themselves to appear at the ICE office "and/or video conferencing platform." Rev. Subp. at 13-20. Far from rendering the subpoenas enforceable, these revisions create more problems. For one thing, ICE has no authority to seek enforcement ***against OPSO*** with respect to subpoenas directed to other people. Opp. at 10-13. Additionally, OPSO has neither been authorized, nor does OPSO seeks to represent the subject witnesses and any potential defenses they may have against ICE's subpoenas. To serve as the representative for witnesses in this matter presents important conflicts for OPSO that must be avoided. As OPSO is no longer a party to the revised witness testimony subpoenas, this Court should dismiss ICE's requests to enforce them as moot.

Further, the subpoenas are still substantively improper for the reasons OPSO already explained: "The 'subpoena process, which runs only to the witness, cannot be effective' with respect to witnesses who 'are in state custody'"—because a person in state custody cannot appear under his own power. Opp. at 5 (quoting *Story v. Robinson*, 689 F.2d 1176, 1179 (3d Cir. 1982)). For that reason, "[t]he only effective process will be one which runs to the custodian." *Story*, 689 F.2d at 1179. And the way to compel a custodian to produce a detainee for testimony is not a

3

subpoena, but a writ of mandamus or habeas corpus *ad testificandum*, whose requirements are not satisfied here. Opp. at 5-6. ICE's only response to this point is to claim that the subpoenas must be enforceable or else "the United States has no viable options to secure sworn testimony from detainees in Orleans Parish." *See* United States' Reply Memorandum in Support of Petition to Enforce Administrative Subpoenas ("Reply") at 4. But the mere fact that ICE wishes to do something does not mean that Congress (or the Constitution) authorizes it. That an individual ICE officer cannot use an administrative subpoena to command state or local prison officials to turn detainees over to the federal government is a feature of federalism—not a bug in § 1225(d)(4)(A) requiring a judicial override. The radical expansion of the § 1225(d)(4)(A) subpoena power that ICE proposes is unprecedented and should be wholly rejected.

**B. ICE's addition of AS400 fields to the roster subpoena request does not bring it into compliance with § 1225(d)(4).**

ICE's new roster subpoena continues to request a "list of all inmates in your custody who have failed to provide verifiable identity documents that correspond with lawful presence in the United States." Acuna Decl. at Rev. Subp. at 23. The revised subpoena adds only one parenthetical listing various fields from OPSO's AS400 system. Rev. Subp. at 23.

But this additional instruction does not cure the fundamental statutory infirmity of the original subpoenas: They still require OPSO to compile a list of all inmates in its custody lacking proof of legal status, which is a list that does not exist. *See* Opp. at 14-15. Subpoenas simply cannot compel the ***creation*** of documents in this way. *See id*. The importance of this distinction is evident here, where ICE's request would apparently require OPSO to review all of the information on file for ***every single inmate in its custody*** to determine whether or not those individuals have "provide[d] verifiable identity documents that correspond with lawful presence in the United

States," and *only then* create a roster containing all of the data fields requested by ICE about such individuals. That is well beyond the process subpoenas are designed to effectuate.

The awkward way that ICE has shoehorned its roster request on Form I-138[1] underscores its attempt to exceed its statutory authority. The form contains fields for "title of proceeding" and "file number." Rev. Subp. at 43. ICE wrote "Roster of alien inmates in the Orleans Justice Center" in the first field and "246275075, et al." in the second. *Id*. The file number 246275075 belongs to Jose Fernando Arzu-Osoto, one of the subjects of the other subpoenas. *Id*. at 13. ICE redacted the file number for its roster subpoenas in its previous filing. *See* Acuna Decl. at 62. ICE's traditional understanding of its authority, then, was limited to requesting documents related to certain discrete proceedings and known persons. *See* Opp. at 12. ICE seeks to buck that understanding here. A roster is not a proceeding, and writing "et. al" in the file number field is not a substitute for identifying the relevant persons.

This leads to an additional problem: Such an unspecific subpoena is not authorized by § 1225(d)(4). Subpoenas issued as a "fishing expedition to see what may turn up" are improper. *Bowman Dairy Co. v. United States.*, 341 U.S. 214, 221 (1951); *see also United States v. Bisceglia*, 420 U.S. 141, 151 (1975) (finding agency duty to issue summons "no broader than necessary to achieve its purpose."). With respect to immigration subpoenas, the agency's authority is "not without limits." *Peters v. United States*, 853 F.2d 692, 695 (9th Cir. 1988). In *Peters*, ICE's predecessor agency asserted that the statutory language permitting immigration subpoenas[2] gave it the power to demand a landlord's records concerning unidentified tenants. 853 F.2d at 699-700.

---

[1] ICE must issue its subpoenas on Form I-138. *See* 8 C.F.R. § 287.4(b).

[2] The subpoena provision in the INA at that time was located at 8 U.S.C. § 1225(a), but was identical to the modern-day § 1225(d)(4).

However, the Ninth Circuit found that because the subpoenas requested documents concerning unnamed persons, they constituted an overbroad fishing expedition and the statute did not authorize such "John Doe" subpoenas. *Id*.

This Court should adopt the Ninth Circuit's *Peters* rationale because the revised roster subpoena demands the recipient to generate a wide-ranging list of suspected noncitizens. DFOD Acuna explained in his initial declaration that "[t]he rationale for requesting a roster of inmates from OPSO is to ascertain the identities of potential aliens in their custody who have not yet been encountered by immigration officials." Acuna Decl. ¶ 76. By DFOD Acuna's own admission, the subpoena seeks information about persons unknown to ICE. The revised subpoenas confirm that ICE has no idea whose information it is subpoenaing. As such, the subpoena is impermissibly broad and exceeds the power granted ICE by § 1225(d)(4).

## II. ICE's Revised Subpoenas for Witness Testimony and Rosters Still Unconstitutionally Commandeer OPSO

### A. ICE's subpoenas for witness testimony at ICE's office "And/Or" via video teleconferencing violate the tenth amendment if they require OPSO action

For the reasons outlined in section I, *supra*, ICE's new witness-production subpoenas are not enforceable against OPSO because they are not directed to OPSO and are improper in any event. However, to the extent ICE believes that it may force OPSO to facilitate testimony—either by producing witnesses at ICE's office or coordinating video teleconferencing--these subpoenas still violate the Tenth Amendment.

The Supreme Court in *Printz v. United States* laid out the relevant Tenth Amendment commandeering rule: Commanding "the States' officers, or those of their political subdivisions, to administer or enforce a federal regulatory program" is "fundamentally incompatible with our constitutional system of dual sovereignty"—"and no case-by-case weighing of the burdens or

6

benefits is necessary." 521 U.S. 898, 935 (1997). ICE may *request* that OPSO facilitate interviews in furtherance of federal immigration goals, but it may not force it to do so. Opp. 12-13.

Nor are the subpoenas the kinds of "purely ministerial" requests that Justice O'Connor's concurrence in *Printz* indicated might pass Tenth Amendment muster. *Id*. at 936 (O'CONNOR, J. concurring). Requests to make detainees available for video interviews require much more than simply sharing existing documents with an agency. OPSO is charged with enforcing Louisiana law, maintaining constitutionally compliant conditions within its jail, and preventing unconstitutional over-detention of people in its custody. *See Jackson v. Louisiana*. 980 F.2d 1009, 1013 (5th Cir. 1993); *Anderson v. City of New Orleans*, 38 F.4th 472, 480 (5th Cir. 2022); *Cacho v. Gusman Cacho v. Gusman*, No. 11-225, 2026 WL 456587, at *1-2 (E.D. La. Feb. 18, 2026). It does all of this on a severely-constrained budget, which is set largely through appropriations from the City of New Orleans approved by local elected officials. And in light of the recent budget crisis faced by the City of New Orleans, OPSO's fund allocation is set to be slashed by twenty percent (20%).

Before the recently announced cut to OPSO funding by the City of New Orleans, OPSO was already straining its financial and human resources in order to fulfill its obligations. Certainly, to add any of the obligations effectuated by ICE's subpoenas would further strain and divert significant OPSO resources from its true obligations. Whether by transport to ICE's out-of-parish facility, or by coordinating and hosting video conferences, operations would be adversely affected at OPSO's cost. Again, the Petitioner also fails to explain what the subpoenas' "and/or" clause even means. And to whatever extent ICE seeks to require that OPSO bring detainees to ICE's office if video teleconferencing is unavailable, the subpoenas are unlawful for the reasons detailed in OPSO's opposition memorandum. Opp. at 18.

The federal government cites no cases in which any court has upheld such an explicit command for a local law enforcement agency to serve federal policy goals. Nor does it cite any authority authorizing such a burdensome wresting of local resources to serve a federal program. Enforcing the subpoenas would usurp OPSO's sovereign prerogative to direct its resources towards fulfilling its lawful obligations and thus would violate the Tenth Amendment.[3]

### B. ICE's subpoenas requiring rolling compilation of rosters still violate the tenth amendment.

ICE's addition of AS400 entries to its subpoena does not lessen the extent to which ICE's subpoenas seek to unconstitutionally commandeer OPSO. Opp. 14-15. OPSO does not have any such readily available list, yet ICE's command to create one out of whole cloth remains. At the very least, enforcement of the subpoena would force OPSO to review its data for all the detainees in its custody to create ICE's desired list. OPSO explains above why this demand lies beyond ICE's statutory authority, but it also creates a serious commandeering problem: As ICE's serial requests to create new versions of this "roster" illustrate, the government seeks to coopt OPSO's labor on a long-term basis to "creat[e] and continually or definitely updat[e] a brand-new database of immigrant detainees for ICE's use." Opp. 14. The Tenth Amendment prohibits conscripting state law enforcement into service in that way. *See Printz*, 521 U.S. at 922, 929.

In addition, the added sentence in ICE's revised subpoenas does not contain anything that would assist OPSO in determining what names would populate any such list. The key question remains: what documents correspond with lawful presence in the United States? The updated subpoena does not say. And OPSO does not know, because determining which persons may be

---

[3] At minimum, the serious Tenth Amendment concerns presented by ICE's interpretation of 8 U.S.C. § 1225(d)(4)(A) militate in favor of construing the statute to avoid an interpretation that would allow the federal government to command states and localities. *See Exelon Wind 1, L.L.C. v. Nelson*, 766 F.3d 380, 396 (5th Cir. 2014).

removable from the United States is a wholly federal matter absent a cooperation agreement pursuant to 8 U.S.C. § 1357(g). *See Arizona v. United States*, 567 U.S. 387, 409 (2012). That OPSO would need to engage in analysis requiring the exercise of judgment and discretion to fulfill the subpoena underscores the Tenth Amendment problem: OPSO would be required to do something it normally does not do to comply and has not done for years since *Cacho*. *Cf United States v. Pitts*, No. CRIM.A. 07-157-A, 2007 WL 3353423, at *9 (M.D. La. Nov. 7, 2007).

Nor is the federal government's comment about how it replaced the five prior roster subpoenas with one subpoena meaningful. It makes no pretensions that its subpoena requests will not be ongoing. The federal government expressly admitted as much at this Court's March 17, 2026 hearing. As such, this Court should consider ICE's subpoenas to create an ongoing obligation to produce these rosters. Even the case relied upon by the federal government to support its Tenth Amendment defense, *U.S. Immigration & Customs Enforcement v. Gomez*, 445 F. Supp. 3d 1213 (D. Colo. 2020), indicated this type of continuing obligation is constitutionally suspect. *See* Opp. at 10.

Tellingly, the federal government cites no cases in which local law enforcement was required to compile and create lists for federal consumption on a rolling basis. As such, enforcement of the roster subpoena would still unconstitutionally commandeer OPSO.

### III. ICE's Revised Subpoenas Still Conflict with the *Cacho* Consent Decree.

ICE's revised subpoenas do not cure the conflict with the *Cacho* consent decree identified in OPSO's original opposition brief, namely that the subpoena requiring creation of a roster requires precisely the kind of "immigration status investigation into individuals in OPSO's custody" barred by the consent decree. Opp. 16-17. The subpoenas are also still requesting certain

information that is expressly prohibited by *Cacho*, such as home address, etc. This remains grounds to deny the motion to enforce these subpoenas.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Respondent's opposition brief, the Court should deny the United States's petition for judicial enforcement of administrative subpoenas.

**RESPECTFULLY SUBMITTED,**
**ORLEANS PARISH SHERIFF'S OFFICE**

*/s/ Tracey J. Comeaux*

_____
**TRACEY J. COMEAUX** (LSBA No. 38700)
Chief Legal Officer
Comeauxt@opso.us
**JOHN S. WILLIAMS** (LSBA No. 32270)
Chief of Staff and Legal Counsel
Williamsjo@opso.us
2800 Perdido Street
New Orleans, LA 70119
(504) 822-8000 office
(504) 202-9454 facsimile
COUNSEL FOR SHERIFF HUTSON
-PUBLIC ENTITY/FEE EXEMPT-
(See La. R.S. 13:4521 & 13:5112)